UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:18-CV-00036-GNS

JEFFREY B. TRAUGHBER
as the Administrator of
the Estate of Erin Schutt                                                                   PLAINTIFF

v.

SUN LIFE FINANCIAL (U.S.)
SERVICES COMPANY, INC.                                                                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to File an Amended Complaint (DN 13) and Defendant's Motion to Dismiss for Failure to State a Claim, or in the alternative, for Partial Summary Judgment (DN 8). For the reasons provided below, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**.

### I.     BACKGROUND

This action arises from a denial of accidental death benefits under a life insurance plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. On December 26, 2015, Erin M. Nynas-Schutt ("Decedent") was involved in a fatal motor vehicle accident. (Notice Removal Ex. B, ¶ 4, DN 1-2 [hereinafter Compl.]). Plaintiff Jeffrey B. Traughber ("Plaintiff") is the administrator of Decedent's estate. (Compl. ¶ 1). Decedent's employer, Metalsa Structural Products, Inc., established and maintained an employee welfare benefit plan ("the Plan") funded by group policies issued by Defendant Sun Life Assurance Company of Canada ("Sun Life"). (Haarstick Decl. ¶ 5, DN 8-2). Decedent was a participant in

1

the Plan and, shortly following her death, her estate filed a claim for life insurance and accidental death benefits with Sun Life. (Haarstick Decl. ¶ 8).

Kevin Haarstick ("Haarstick") is the Life Claims Analyst for Sun Life who dealt with Plaintiff during the claim process. (Haarstick Decl. ¶¶ 3-4). Sun Life reviewed Plaintiff's claims and paid life insurance benefits, but after receiving the toxicology report from the coroner indicating Decedent tested positive for nonprescribed drugs, Sun Life determined that accidental death benefits were not payable under several provisions of Decedent's policy. (Haarstick Decl. ¶¶ 7-8).

Haarstick communicated Sun Life's denial of accidental death benefits to Decedent's estate by letter dated March 16, 2017 ("Denial Letter"). (Haarstick Decl. ¶ 9). The Denial Letter also contained instructions for appealing Sun Life's determination, including the statement that "[i]f you disagree with our decision, you may request in writing a review of the denial within 180 days after receiving this notice of denial." (Haarstick Decl. ¶ 10).

Sun Life received a letter dated April 25, 2017, from Plaintiff on behalf of Decedent's estate. (Haarstick Decl. ¶ 11). The letter indicated Plaintiff had received the Denial Letter and referred to an unanswered email requesting a copy of the toxicology report and the information on which Sun Life based its decision to deny accidental death benefits. (Haarstick Decl. ¶ 11). Haarstick replied by letter dated May 9, 2017, stating that Sun Life had no record of Plaintiff's earlier email, and including a copy of the requested toxicology and prescription reports. (Haarstick Decl. ¶ 11). Haarstick also provided two phone numbers for Plaintiff to use for other inquiries to Sun Life or to request a complete copy of the claim file. (Def.'s Mot. Dismiss Ex. F, at 4, DN 8-8).

Sun Life received no further communication from Plaintiff until January 2018, several months after the 180-day deadline for seeking review of Sun Life's Denial Letter. (Haarstick Decl. ¶ 12). On January 22, 2018, Sun Life received a demand letter from Plaintiff's counsel with a draft of the Complaint alleging violations of multiple Kentucky laws. (Haarstick Decl. ¶ 12).

This suit was initially filed in state court in Todd County, Kentucky, asserting claims under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA") and the Kentucky Consumer Protection Act ("KCPA"). (Compl. ¶¶ 5-9, DN 1-2). Plaintiff asserts that Defendant violated its duties set forth in the KUCSPA when it denied the claim because, "[p]ursuant to the terms of the policy, Defendant was obligated to pay the Plaintiff . . . ." (Compl. ¶ 5). Plaintiff contends that "[d]efendant either knew there was no reasonable basis for denying Plaintiff's claim or acted with reckless disregard for whether such a basis existed." (Compl. ¶ 6). Plaintiff alleges Defendant's failure to abide by the KUCSPA constituted "oppression, fraud, malice, and bad faith" in violation of the KCPA to the point the Plaintiff is entitled to punitive damages. (Compl. ¶¶ 8-9). Sun Life removed the action to this Court under 28 U.S.C. § 1441. (Notice Removal, DN 1).

In the Complaint, Plaintiff misidentified Sun Life Financial (U.S.) Services Company, Inc. as the defendant. (Compl. ¶ 2). That company is not an insurance company, did not issue the policies in this case, and has no responsibility for paying benefits under Decedent's policies. Instead, as discussed above, the policies involved here were issued and underwritten by Sun Life Assurance Company of Canada. (Haarstick Decl. ¶ 13; Def.'s Mot. Dismiss, DN 8). Plaintiff's proposed First Amended Complaint names the correct defendant, but otherwise restates the state law claims originally filed in Kentucky state court. (First Am. Compl., DN 13-1).

## II.     JURISDICTION

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## III.     STANDARD OF REVIEW

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion to amend a pleading should be denied, however, "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). A proposed amendment to a pleading is deemed futile if the amendment "could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citation omitted).

To survive a motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere statements of legal conclusions are insufficient for avoiding a 12(b)(6) motion to dismiss. *Id.* at 678. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re Harchar*, 694 F.3d 639, 644 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 677).

## IV. DISCUSSION

Defendant urges the Court to deny the Motion for Leave to Amend because the proposed amendment would be futile in light of Defendant's other arguments in its Motion to Dismiss. Those arguments are: First, Plaintiff's state law claims are preempted by ERISA, 29 U.S.C. §§ 1001-1461; and second, Plaintiff failed to exhaust administrative remedies and the 180-day deadline to do so under the Plan has passed. (Def.'s Resp. Pl.'s Mot. Leave File Am. Compl., DN 15).

Plaintiff accepts the applicability of ERISA and the removal of the matter from state court. (Pl.'s Resp. Def.'s Mot. Dismiss 1, DN 11). Plaintiff objects, however, to Defendant's assertion that Plaintiff failed to exhaust administrative remedies because, "[t]he Defendant failed to clearly inform the Plaintiff of his rights" to appeal Sun Life's determination. (Pl.'s Resp. Def.'s Mot. Dismiss 2).

### A. ERISA Preemption

When Congress enacted ERISA, it set out substantive regulatory requirements for employee benefit plans and "provid[ed] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). ERISA also contains expansive preemption provisions, and, with some limited exceptions, ERISA "supersede[s] any and all State laws insofar as they . . . relate to any [covered] employee benefit plan . . . ." 29 U.S.C. § 1144(a).

The Supreme Court set out the test for preemption under ERISA in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004):

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated

by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id*. at 210 (internal citation omitted). Thus, a claim will be preempted if: (1) the plaintiff complains about a denial of benefits to which he is entitled "only because of the terms of an ERISA-regulated employee benefit plan"; and (2) the plaintiff does not allege the violation of a "legal duty (state or federal) independent of ERISA or the plan terms[.]" *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Davila*, 542 U.S. at 210).

### 1. *ERISA-Regulated Plan*

Plaintiff's claims in this matter relate to accidental death benefits denied by Sun Life under the ERISA-regulated plan provided to Decedent by her employer. (Haarstick Decl. ¶ 5). It is clear that the conduct at issue was "indisputably part of the process used to assess [Plaintiff's] claim for a benefit payment under the plan . . . ." *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 6 (1st Cir. 1999). Moreover, Plaintiff accepts the applicability of ERISA to the Plan. (Pl.'s Resp. Def.'s Mot. Dismiss 1). Accordingly, the first requirement under *Davila* is satisfied. *See Davila*, 542 U.S. at 210; *Everett v. Metro. Life Ins. Co.*, No. 3:16-CV-00074-GNS, 2017 WL 2126329, at *2 (W.D. Ky. May 16, 2017).

### 2. *Violations of Independent Legal Duties*

The second requirement for preemption is also satisfied here because the state-law duties Plaintiff pleads are not independent from the rights and duties existing under ERISA. *See Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013). A state law claim is independent of ERISA when the duties and obligations at issue are "not derived from, or conditioned upon, the terms of the [ERISA plan]" itself. *Id.* at 614. A duty is not "independent" for purposes of *Davila* merely because the duty "nominally arises from a source other than the

6

plan's terms." *Id.* at 613. If a claim is truly independent of an ERISA-governed plan, a court will have "no need[] to interpret the plan to determine whether that duty exists." *Milby v. MCMC LLC*, 844 F.3d 605, 611 (6th Cir. 2016) (alteration in original) (quoting *Gardner*, 715 F.3d at 614).

Plaintiff alleges Defendant violated two Kentucky laws in denying the Decedent's accidental death benefits. (Compl. ¶¶ 5-9). The first is KUCSPA, which provides a litany of acts and omissions that amount to unfair claims settlement practices in insurance dealings. *See* KRS 304.12-230(1)-(17). The second law identified by Plaintiff—the KCPA—makes unlawful any "unfair, false, misleading or deceptive acts or practices in the conduct of any trade or commerce . . . ." KRS 367.170(1). The Plaintiff also points to KRS 367.220, which gives parties a right to sue for the "ascertainable loss of property [suffered] as a result . . . of a method, act or practices declared unlawful by [the KCPA] . . . ." KRS 367.220(1). While KUCSPA and KCPA might create rights and obligations by which insurers conducting business in Kentucky otherwise must abide, the claims afforded by these statutes are not independent from ERISA when a plaintiff's claims arise from a violation of the rights and duties provided by an ERISA-governed policy. *See Everett*, 2017 WL 2126329, at *3.

This Court has previously reached this same conclusion regarding these two specific Kentucky statutes. Regarding KUCSPA, in *Howard v. Prudential Insurance Company of America*, No. 3:16-CV-00752-CRS, 2017 WL 1199759 (W.D. Ky. Mar. 30, 2017), this Court determined that the plaintiff's KUCSPA claims in an alleged wrongful denial of benefits under an ERISA-governed plan did "not seek to correct any violation of a legal duty that is independent of ERISA," and thus were preempted. *Howard*, 2017 WL 1199759, at *4; *see also Milby v. Liberty Life Assurance Co. of Boston*, 102 F. Supp. 3d 922 (W.D. Ky. 2015) ("Plaintiff's claims for common law and statutory bad faith cannot stand independent of the ERISA plan because

7

interpretation of the LTD policy is an essential aspect of those claims." (citation omitted)). KUCSPA claims are completely preempted where they are based on administering benefits and fulfilling duties which existed because of the ERISA-governed plan. *See Milby*, 102 F. Supp. 3d at 934-35 (citations omitted); *Hagan v. Nw. Mut. Life Ins. Co.*, No. 3:15-CV-00298-CRS, 2016 WL 427922, at *4 (W.D. Ky. Feb. 3, 2016). All benefits Plaintiff seeks in this instance are based on administering claims and fulfilling duties existing under its ERISA-governed plan. (Compl. ¶ 5). Accordingly, Plaintiff's KUCSPA claims are preempted.

Likewise, all KCPA claims asserted by Plaintiff arise from duties and obligations set out in Sun Life's ERISA-governed Plan. As this Court has previously noted in considering similar claims, an alleged violation of the KCPA for "unfair, false, misleading and/or deceptive practice[s]" required interpreting the plan and analyzing the administration of claims. *Hagan*, 2016 WL 427922, at *4; *see also id.* (holding that the plaintiff's bad faith claim "[arose] from Northwestern's alleged obligations to pay ERISA plan benefits and review ERISA plan claims for benefits. Deciding [this] claim[] would require interpretation of the [ERISA plan] and an analysis of Northwestern's administration of Hagan's disability claim. The claim[] attempt[s] to bypass ERISA and use state law as an alternative to recover ERISA plan benefits. As such, ERISA preempts Hagan's state law claims and Northwestern properly removed the matter from state court."). The Complaint in this matter similarly asks this Court to "bypass ERISA and use [Kentucky] state law as an alternative to recover ERISA plan benefits." *Id.* This is made particularly apparent by Plaintiff's reference to benefits allegedly due "[p]ursuant to the terms of the policy," and his failure to refer to any violation of the expansive regulatory scheme established by ERISA regarding plan provider obligations in communications with beneficiaries. (Compl. ¶ 5). By contrast, Sun Life demonstrates in detail how it complied with applicable ERISA provisions

8

and regulations in its communications with Plaintiff. (Def.'s Reply Pl.'s Resp. Def.'s Mot. Dismiss 2-4). In the absence of any claims by Plaintiff arising independently of the Plan, Plaintiff's KCPA claims are also preempted.

### B. Exhaustion of Administrative Remedies

Sun Life asserts that Plaintiff failed to exhaust administrative remedies under the Plan. (Def.'s Mot. Dismiss 10-13). Federal law permits participants in ERISA-governed plans to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B). The Sixth Circuit has long held that an ERISA plaintiff must exhaust administrative remedies prior to commencing a civil action. *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 504 (6th Cir. 2004); *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 717 (6th Cir. 1991)). Regarding appeals to benefits determinations, the parties are generally bound by the appeal process set forth in the governing ERISA plan. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (recognizing "the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims." (citation omitted)). Therefore, to determine whether Plaintiff satisfied this prerequisite to bringing this civil action, this Court must consider the terms of the Plan and Plaintiff's compliance with the procedures provided therein for appealing benefits determinations. *See id*.

Section VII of the claim provisions of Decedent's policy provides information on the procedures for reviewing denied claims under subsection D, titled "Review Procedure." (Def.'s Mot. Dismiss Ex. A, at 79, DN 8-3). Under the procedure, "[i]f all or any part of a claim is denied, the claimant may request in writing a review of the denial within 180 days after receiving notice of denial." (Def.'s Mot. Dismiss Ex. A, at 79). Subsection D further informs policyholders that

claimants "may submit written comments, documents, records or other information relating to the claim for benefits, and may request free of charge copies of all documents, records and other information relevant to the claimant's claim for benefits." (Def.'s Mot. Dismiss Ex. A, at 79).

Sun Life has established that Plaintiff failed to appeal Sun Life's determination provided in its Denial Letter. Plaintiff responded to the Denial Letter on April 25, 2017, and requested the documents Sun Life used to reach its decision. (Def.'s Mot. Dismiss, Ex. G, at 2). Plaintiff explicitly acknowledged the right to appeal in his letter of April 25, 2017, stating that "[u]pon receipt of the documentation a determination will be made whether to request a review of the denial or to pursue other remedies." (Def.'s Mot. Dismiss Ex. G, at 2). Following the April 25 letter, however, Plaintiff never requested a review of Sun Life's denial and took no further action until long after the 180-day review period established under the Plan.

Plaintiff's argument that his April 25 letter amounted to an appeal is unavailing. Nowhere in that communication did Plaintiff state an intention to appeal. Instead, he referenced a determination **yet to be made** whether review of Sun Life's denial would be sought. Plaintiff provides no case law supporting the proposition that a request for more information qualifies as an appeal for purposes of exhausting administrative remedies under ERISA. Defendant, on the other hand, points to decisions from the Fifth, Seventh, and Eleventh Circuits holding that a "rear-guard attempt to turn a request for information . . . into a demand for administrative review must be rejected." *Powell v. A.T.&T Commc'ns, Inc.*, 938 F.2d 823, 827 (7th Cir. 1991); *see Swanson v. Hearst Corp.*, 586 F.3d 1016 (5th Cir. 2009) (affirming judgment that an ERISA claimant failed to exhaust administrative remedies with a letter expressing an "intention to appeal" without any supporting argumentation); *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355 (7th Cir. 2011) (finding letters from claimant stating he would "decide whether or not to appeal" and "might bring

10

an appeal" did not constitute an appeal under ERISA); *Am. Dental Ass'n v. WellPoint Health Networks, Inc.*, 494 F. App'x 43 (11th Cir. 2012) (finding a letter requesting additional information did not constitute an appeal satisfying ERISA's exhaustion requirement). At most, then, Plaintiff's April 25 letter merely indicated that an appeal *might* come after he received the requested documents. (Def.'s Mot. Dismiss Ex. G, at 2). Under these circumstances, it is clear that Plaintiff did not request timely review of Sun Life's denial of the claim. Accordingly, Plaintiff failed to exhaust his administrative remedies as is required by the Sixth Circuit's construction of ERISA.

C. **Futility of First Amended Complaint**

Plaintiff has moved for leave to amend the Complaint. (Pl.'s Mot. Leave File Am. Compl., DN 13). As noted above, the purpose of the amendment is to correct the name of the defendant in this action.

While such motions are often granted under Fed. R. Civ. P. 15, "[t]he Court has discretion to deny leave based on 'futility of the amendment.'" *Masterson v. Xerox Corp.*, No. 3:13-CV-692-DJH-CHL, 2015 WL 4934203, at *4-5 (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile if the amended pleading could not withstand a motion to dismiss for failure to state a claim." *Crider v. Life Ins. Co. of N. Am.*, No. 3:07-CV-331-H, 2008 WL 2782871, at *1 (W.D. Ky. July 15, 2008).

As discussed above, Plaintiff's state-law claims are preempted by ERISA, and he failed to exhaust his administrative remedies. Because the proposed First Amended Complaint reiterates claims that the Court is dismissing, the amendment is futile. Accordingly, the Court will deny the motion.

11

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint (DN 13) is **DENIED**, and Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (DN 8) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

November 19, 2018

cc: counsel of record